## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ADVANTAGE HEALTHPLAN INC. and ELLIOT R. WOLFF, | ) ) ) ) | |
| Appellants, | ) | Civil Action No. 08-0718-CKK (Appeal) |
| | ) | |
| v. | ) | Bankruptcy No. 99-1159 |
| | ) | (Chapter 11) |
| PILLSBURY WINTHROP SHAW PITTMAN, LLP) et al., | ) | |
| | ) | |
| Appellees. | ) | |

### APPELLANTS' BRIEF

Janet M. Nesse  Bar No. 358514
Lawrence P. Block  Bar No. 452190
Stinson Morrison Hecker LLP
1150 18th St., NW, Suite 800
Washington, DC 20036
Telephone: (202) 785-9100
Fax:  (202) 785-9163

*Counsel for Appellants*

`

# I.    TABLE OF CONTENTS

I.    TABLE OF CONTENTS................................................................................i

II.   BASIS OF APPELLATE JURISDICTION ......................................................1

III.  ISSUES PRESENTED AND STANDARD OF REVIEW .................................2

    A.    ISSUES PRESENTED........................................................................2

    B.    STANDARD OF REVIEW ................................................................2

IV.   STATEMENT OF THE CASE AND STATEMENT OF FACTS.....................3

    A.    STATEMENT OF THE CASE..........................................................3

    B.    STATEMENT OF FACTS ................................................................5

V.    ARGUMENT....................................................................................................13

    A.    The Bankruptcy Court was Divested of Jurisdiction by the Filing of the Notice of Appeal on December 31, 2007 and, Therefore, did not have Jurisdiction to Enter the February 16, 2008 Order. .................................13

    B.    The Bankruptcy Court Erred When it Held that the Plan Committee had Breached the Settlement Agreement....................................................17

    C.    The Bankruptcy Court did not Have Jurisdiction to Decide the Declaratory Judgment Motion Because the Issues Were Not Ripe..........................19

    D.    Some of the Issues Raised by the Declaratory Judgment Motion are Moot and the Remainder Could Become Moot.................................................20

    E.    The Bankruptcy Court Erred by Allowing the Motion for Declaratory Judgment to  Proceed as a Contested Matter Rather than as an Adversary Proceeding.........................................................................................21

    F.    The Bankruptcy Court Erred by Exercising Subject Matter Jurisdiction Over This Declaratory Judgment Proceeding. ......................................22

VI.   CONCLUSION................................................................................................23

# TABLE OF AUTHORITIES

## CASES

*Aboudaram v. DeGroote*,
  2006 U.S. Dist. LEXIS 26161 (D.D.C.) ...................................................................2

*Belmar v. Garza (In re Belmar)*,
  319 B.R. 748 (Bankr. D.C. 2004) .........................................................................18

*Bryant v. Bryant*,
  175 B.R. 9 (W.D. Va. 1994) .................................................................................15

*Cibro Petroleum Products, Inc. v. City of Albany (In re Winimo Realty Corp.)*,
  279 B.R. 99 (S.D. N.Y. 2001)......................................................................... 14-16

*Collin County v. Siemens Bus. Services*,
  2006 U.S. Dist. LEXIS 55368 (E.D. Tex) ............................................................15

*Connelly v. Swick & Shapiro*,
  749 A.2d 1264 (D.C. 2000) ..................................................................................23

*Crump v. U.S.*,
  1996 U.S. Dist. LEXIS 5517 ( D. Col. 1996) ......................................................21

*Gordon v. Gouline*,
  1995 U.S. Dist. LEXIS 20852 (D.D.C.) ..................................................................2

*Griggs v. Provident Consumer Discount Co.*,
  459 U.S. 56 (1982)................................................................................................16

*Ideal Elec. Security. Co. v. International Fidelity Ins. Co.*,
  129 F.3d 143 (D.C. Cir. 1997)..............................................................................23

*In re Grand Jury Proceedings Under Seal v. United States*,
  947 F.2d 1188 (4th Cir. 1991) ...................................................................... 13-14

*In re The Greater Southeast Community Hospital Foundation, Inc., et al.*,
  *Case No. 99-01159.* Appellant Elliot R. Wolff is Advantage's .................................1

*In re Maurice*,
  179 B.R. 881 (Bankr. N.D. Ill. 1995) ...................................................................15

*In re Parker*, Slip Copy, 2007 WL 1521068 *1 (Bankr. D.D.C., May 21, 2007) .........................17

DB04/811703.0002/451853.1

*In re St. Charles Preservation Investors, Ltd.*,
    112 B.R. 469 (Bankr. D.C. 1990) ...................................................................................1

*In re Viney*,
    369 B.R. 392 (Bankr. N.D. Ind. 2007)...........................................................................17

*Kates v. Fox, Rothschild, O'Brien & Frankel (In re Mazzacone)*,
    1995 U.S. Dist. LEXIS 3218 ...................................................................................14, 17

*Matter of Beard*,
    112 B.R. 951 (Bnkr. N.D. Ind. 1990) ...........................................................................17

*Matter of Perkins*,
    902 F.2d 1254 (7th Cir. 1990) .......................................................................................17

*Packard v. Provident Nat'l Bank*,
    994 F.2d 1039 (3d Cir. 1993).........................................................................................23

*Premium of America v. Sanchez (In re Sanchez)*,
    342 B.R. 390 (Bankr. D.C. 2006) ..................................................................................22

*Shaw Pittman v. Shin (In re Shin)*, 2004 Bankr. LEXIS 2262, at *5 (Bankr. D.C.).....................22

*Simonton Building Products v. Johnson*,
    2008 U.S. Dist. LEXIS 26358, at * 19-20 (N.D. W. Va.) .............................................19

*State Bank v. Gledhill*,
    76 F.3d 1070 (10th Cir. 1996) .......................................................................................21

*Surowitz v. Hilton Hotels Corp.*,
    383 U.S. 363 (1966)........................................................................................................22

*Treese v. Carr*,
    1989 U.S. Dist. LEXIS 7954 (D. D.C) ..........................................................................23

*Vasconi v. Credit Manager Assoc. of Cal.*,
    1997 U.S. Dist. LEXIS 24177 .......................................................................................23

*Walker v. Grigsby*,
    2006 U.S. Dist. LEXIS 94888 (D. Md.) ........................................................................20

*Williams v. Brown (In re Air Safety International, L.C.)*,
    308 B.R. 90 (S.D. Fla. 2003) .........................................................................................18

*Wilson v. Cain*,
    1999 U.S. Dist. LEXIS 22662 (E.D. La.) ......................................................................15

DB04/811703.0002/451853.1

**STATUTES**

28 U.S.C. § 158(a)(1)......................................................................................................................1

28 U.S.C. § 2201 ............................................................................................ 1, 5, 11-13, 23

**OTHER AUTHORITIES**

9 *Moore's Federal Practice*, para. 203.11, pp. 3-45 ...................................................15

Rule 1.5(a) of the District of Columbia Rules ..............................................................23

Fed. R. Bankr. P. 7001 ....................................................................................................21

Fed. R. Bankr. P. 7001(1) ...............................................................................................21

Fed. R. Bankr. P. 7001(9) ...............................................................................................21

Fed. R. Bankr. P. 8013......................................................................................................23

Fed. R. Bankr. P. 9019......................................................................................................9, 11

DB04/811703.0002/451853.1

## II.    BASIS OF APPELLATE JURISDICTION

Appellant Advantage Healthplan Inc. ("Advantage") is a member of the Plan Committee established by a Plan of Reorganization approved by the U.S. Bankruptcy Court for the District of Columbia ("Bankruptcy Court") in the bankruptcy case styled *In re The Greater Southeast Community Hospital Foundation, Inc., et al., Case No. 99-01159.*  Appellant Elliot R. Wolff is Advantage's corporate representative on the Plan Committee.  Appellees are Patrick J. Potter ("Potter") and Pillsbury Winthrop Shaw Pittman, LLP ("Pillsbury"), the law firm which represented the Plan Committee and Potter when Potter was the Plan Agent.

Appellants seek review of an order of the Bankruptcy Court dated February 26, 2008, entitled Order on Motion for Declaratory Relief Pursuant to 28 U.S.C. § 2201 and to Enforce Settlement Agreement ("Declaratory Judgment Order").   The Declaratory Judgment Order granted a motion filed by Pillsbury and Potter to enforce a purported settlement of a dispute relating to attorneys fees and disbursements claimed by Potter and Pillsbury.

This Court has jurisdiction to hear appeals from the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1).  Orders in bankruptcy cases, such as the one challenged here, may be immediately appealed as final orders as a matter of right if they dispose of discrete disputes within the larger case.  *In re St. Charles Preservation Investors, Ltd.*, 112 B.R. 469, 471 (Bankr. D.C. 1990).

DB04/811703.0002/451853.1

## III.    ISSUES PRESENTED AND STANDARD OF REVIEW

### A.    ISSUES PRESENTED

1.    Whether the Bankruptcy Court was divested of jurisdiction by the filing of the Notice of Appeal on December 31, 2007 and, therefore, did not have jurisdiction to enter the February 16, 2008 Order.

2.    Whether the Bankruptcy Court erred when it held that the Plan Committee had breached the settlement agreement.

3.    Whether the Bankruptcy Court erred when it ruled on the Declaratory Judgment Motion even though the issues were not ripe for review.

4.    Whether the Bankruptcy Court erred by ruling on issues that could become moot when the First Appeal is resolved.  Whether some of the issues on appeal have become moot since the Bankruptcy Court's ruling on the Declaratory Judgment Motion.

5.    Whether The Bankruptcy Court erred by allowing the Motion for Declaratory Judgment to  proceed as a contested matter rather than as an adversary proceeding.

6.    Whether the Bankruptcy court erred by exercising subject matter jurisdiction over this declaratory judgment proceeding.

### B.    STANDARD OF REVIEW

On appeal, federal district courts review *de novo*, questions of law determined by bankruptcy courts.  *Aboudaram v. DeGroote*, 2006 U.S. Dist. LEXIS 26161 (D.D.C.).  The Bankruptcy Court's findings of fact are to be reviewed under the clearly erroneous standard. *Gordon v. Gouline*, 1995 U.S. Dist. LEXIS 20852, at *8 (D.D.C.).

2

## IV.    STATEMENT OF THE CASE AND STATEMENT OF FACTS

### A.    STATEMENT OF THE CASE

Appellant Advantage has served as a member of the Plan Committee since confirmation of the Plan in 2001.  During that entire period of time, Appellant Elliot Wolff has served as Advantage's corporate representative to the Plan Committee.  After the resignation of the original Plan Agent in March 2006, Potter was retained by the Plan Committee and Pillsbury was retained to represent both Potter and the Plan Committee.

The beginnings of this dispute came to light in August 2007, when Potter and Pillsbury filed individual motions for orders authorizing their resignation and payment of their fees and expenses.  The issue of resignation was rendered moot when the Plan Committee terminated both. Potter and Pillsbury.  The Plan Committee did, however, oppose payment of certain fees and disbursements claimed by Potter and Pillsbury, and the exercise of subject matter jurisdiction by the Bankruptcy Court over the post-confirmation fee dispute, in a contested matter.

A trial date was set for January 2008, and in December 2007 the parties began settlement discussions.  During the course of those negotiations, Mr. Wolff informed the other parties, including the other member of the Plan Committee and Plan Committee counsel, that he would not agree to any compromise that did not include certain essential provisions.  Because the Plan Committee by-laws provided that the settlement of any disputes had to be agreed upon by all (both) members of the Plan Committee, and because the other parties did not agree to Mr. Wolff's conditions, no settlement could possibly have been reached.   In addition, required resolutions were not filed and no resolution approving the settlement was ever signed on behalf of Advantage.

DB04/811703.0002/451853.1

On December 13, 2007, Mr. Wolff received notice that the Bankruptcy Court had scheduled a hearing for December 14, 2007 on two "Emergency Motions" filed by Plan Committee counsel, Shulman, Rogers, Gandal, Pordy and Ecker, P.A., one seeking authority to resign and one seeking a continuance of all scheduled activity in the Potter/Pillsbury claim. Mr. Wolff notified the Bankruptcy Court through a letter to the Bankruptcy Court that he would be unable to attend the December 14, 2007 hearing but that he supported the Emergency Motions.

Surprisingly, on December 14, 2007, the Bankruptcy Court did not consider the "Emergency Motions" for which notice had been sent, but instead entertained discussions on the assertion that there was a settlement among the Plan Committee, Potter and Pillsbury on the fee dispute, which had not been noticed for hearing. The Bankruptcy Court then heard testimony under seal about the purported settlement and continued the proceedings. Mr. Potter stated that notice would be sent to creditors that day, which was four days in advance of a hearing on December 21, 2007, with objections due on December 19th at 5 p.m. The Bankruptcy Court's ruling was contingent on notice being sent on December 14, 2007 to the creditor body. The notices were not mailed until December 17, 2007 to some of the creditors and on December 18 2007 to other creditors. The notices were all sent by regular mail during the height of the Christmas season. With less than two days notice, Mr. Wolff, as the representative of Advantage, filed a timely Objection with Memorandum, with the Bankruptcy Court. Upon a Motion filed by Potter and Pillsbury that was not served on Advantage, the objection was stricken by the Bankruptcy Court. No notice of this occurrence was provided to Advantage prior to the December 21, 2007 hearing. There were no other objections, although committee counsel reportedly responded to undocumented calls, with undisclosed responses. The purported settlement was approved at the hearing.

4

On December 31, 2007,  Advantage and Mr. Wolff noted their appeal ("First Appeal") from the Bankruptcy Court's orders finding that there had been a settlement of the fee dispute and striking Mr. Wolff's objection to the purported settlement.  Appellants submitted their initial Brief on March 31, 2008,  Appellees[1] filed their Briefs on April 17, 2008 and Appellants' Reply Briefs were filed on May 8, 2008.

On January 31, 2008, while the First Appeal was pending, Potter filed a Motion for Declaratory Relief Pursuant to 28 U.S.C. § 2201 ("Declaratory Judgment Motion") and on February 26, 2008, the Bankruptcy Court entered the Declaratory Judgment Order, which granted declaratory relief and enforced the purported settlement.  Mr. Wolff and Advantage noted their appeal from that Order ("this Appeal") on March 6, 2008.  Appellants respectfully submit that the Bankruptcy Court lacked jurisdiction to hear and decide the Declaratory Judgment Motion; that the Declaratory Judgment Motion should have been brought as an Adversary Proceeding rather than as a contested matter; that the disputes identified in the Motion were not ripe for consideration; that the Bankruptcy Court erred when it determined that the Plan Committee had breached the purported settlement agreement; and that the Declaratory Judgment Order should be reversed because some issues are already moot and the remainder will become moot if this Court rules that the purported Settlement Agreement was invalid.

**B.    STATEMENT OF FACTS**

1.    On May 29, 1999, Greater Southeast Community Hospital Corporation, the Greater Southeast Community Hospital Foundation, Inc., Fort Washington Nursing Home, Inc. and Greater Southeast Management Company (collectively "Debtors") filed voluntary petitions in the Bankruptcy Court.

---

[1] Pillsbury and Potter filed one brief and the Plan Committee filed a second brief.

2.      By an order dated November 9, 2001, the Bankruptcy Court confirmed the Debtors' Second Amended Joint Plan of Reorganization ("Plan").  The Plan and Confirmation Order provided for the establishment of the Plan Committee and approved the membership of Advantage as one of three original members of the  Plan Committee.  (Bankruptcy Court Docket ("BCD") 2320, 2469).

3.      The Restated and Ratified By-Laws of the Plan Committee ("By-Laws") provide that "Advantage Healthplan Inc. (represented by Elliot R. Wolff) is one of the original members of the Plan Committee."  *See* By-Laws, attached to the Response to the Emergency Renewed Motion of Shulman Rogers Gandal Pordy & Ecker for Immediate Withdrawal as Counsel to Plan Committee or for Further Instructions (BCD  3384).   The other original members of the Plan Committee were Welcome Homes Inc., represented by Stanley Zupnick, and Eaton Vance Management.  Eaton Vance Management resigned effective June 13, 2007, so that, at all times relevant to these proceedings, the Plan Committee operated with only two members.

4.      The Plan also provided for the appointment of a Plan Agent.  On March 31, 2006, after the resignation of the original Plan Agent, Thomas J. Catliota, Appellee Potter assumed the role of Plan Agent.  Potter is a partner and attorney in Appellee law firm Pillsbury.

5.      From Potter's appointment as Plan Agent, until August 2007, Potter served as Plan Agent and Pillsbury served as counsel to the Plan Agent and the Plan Committee.

6.      On August 3, 2007, Potter filed a Motion to Approve Plan Agent's Resignation and Payment of Fees (BCD 3251), and Pillsbury filed a Motion to Approve Counsel's Resignation and Payment of Fees (BCD 3252).

7.      The Plan Committee removed Potter as Plan Agent and Pillsbury as legal counsel to the Plan Committee on August 13, 2007.  *See* Notice of Termination, BCD  3257.

6

8.     The Plan Committee filed an Opposition to both Motions (BCD 3265), and trial was scheduled for January 8 and 11, 2008.

9.     During the first week of December 2007,  counsel for the Plan Committee, Shulman Rogers Gandal Pordy & Ecker, P.A. ("Shulman Rogers"), spoke with Potter about a potential settlement of the dispute.  *See* December 14, 2007 transcript, BCD  3405.  Advantage never consented to settlement on the terms set forth in the purported Settlement Agreement.  *See* Objection to Motion Pursuant to Bankruptcy Rule 9019 for Court Approval of Settlement Agreement Among the Plan Committee, Patrick J. Potter, Former Plan Agent, and Pillsbury Winthrop Shaw Pittman, LLP, at ¶ 30, BCD  3346.

10.     On December 13, 2007, Shulman Rogers filed two emergency motions in the Bankruptcy Court:  (1) To Withdraw as Counsel for the Plan Committee (BCD 3333); and (2) to Continue a Trial Scheduled for January 8 and 11, 2008 (BCD 3335).  A hearing was scheduled for the following day on the two emergency motions.  *See* Notice of Hearing, BCD  3337.

11.     On December 13, 2007, Mr. Wolff sent a letter to the Bankruptcy Court, with a copy to the other member of the Plan Committee informing the Court that Mr. Wolff would be unavailable to attend the hearing on December 14, 2007 but that he supported the emergency motions. *See* Appendix B to Appellants' Designation of Record in First Appeal, (BCD 3377)

12.     On December 14, 2007, the Bankruptcy Court held a hearing for the stated purpose of  considering the Emergency Motions to authorize Shulman Rogers to withdraw as counsel to the Plan Committee and to continue the trial scheduled for January 8, 2008.

13.     Unbeknownst to Mr. Wolff and Advantage, Appellees did not intend to pursue the Emergency Motions at the December 14, 2007 hearing but rather intended to ask the Court to consider and approve a purported settlement with Appellees.  In fact, counsel for the Plan

Committee and Appellees called Ms. Sally Myers, the courtroom deputy for Judge Teel, to inform the Court that the December 14, 2007 hearing would be focused on a purported settlement. *See* December 14, 2007 transcript at p. 5, BCD 3404.

14.    Advantage was not present at the December 14, 2007 hearing, and the Bankruptcy Court, instead of addressing the Emergency Motions, entertained discussions by counsel for the Plan Committee and Pillsbury on a purported settlement reached between the parties.  In fact, the purported settlement was the only issue addressed at that hearing.  *See* December 14, 2007 transcript, BCD 3403, 3404.

15.    The Bankruptcy Court also heard testimony under seal from Welcome Homes' representative on the Plan Committee, Mr. Zupnick, on the question of whether a settlement had been reached.  No other evidence was presented.  *See* December 14, 2007 transcript (sealed portion), pp. 7-11, BCD  3403.

16.    Following Mr. Zupnick's testimony, Mr. Potter made an oral motion to "[a]pprove the settlement entered into by the parties."  *See* December 14, 2007 transcript, p. 13, line 14, BCD 3404.

17.    Prior to the December 14, 2007 hearing, neither a Motion for Approval of Compromise of Controversy pursuant to Fed. R. Bankr. P. 9019, nor a copy of the purported settlement had been filed in the Bankruptcy Court.  *See* December 14, 2007 transcript, pp. 6-7, BCD 3404.   The terms and conditions of the purported settlement were never set forth for the Court, either prior to or at the hearing.

18.    At the December 14, 2007 hearing, Michael Lichtenstein, Esq., counsel for the Plan Committee, informed the Bankruptcy Court that he was not sure that Mr. Wolff would sign the purported settlement.  *See* December 14, 2007 transcript, p. 16, lines 9-18, BCD  3404.  Mr.

8

Lichtenstein then acknowledged that Mr. Wolff would be able to object once the settlement was filed with the court and notice was sent to creditors. *See* December 14, 2007 transcript, p. 19, lines 4-11, BCD 3404.

19.     Counsel for the Plan Committee stated in open court, at the December 14, 2007 hearing that the only member of the Plan Committee present had approved the purported agreement. Counsel for the Plan Committee did not inform the Court that one member of the Plan Committee did not have the authority to bind the Plan Committee or to agree to the settlement without the agreement of Advantage, the other member of the Plan Committee. *See* December 14, 2007 transcript, p. 14, lines 15-20, BCD 3404; S*ee also* Bylaws, BCD 3384.

20.     Although Pillsbury requested immediate approval, with no notice to anyone, the Bankruptcy Court deferred ruling on the Emergency Motions and the purported agreement and allowed objections to be made by December 19, 2007, if notice went out to creditors on December 14, 2007. *See* December 14, 2007 transcript, p. 23; lines 3-6, BCD 3404.

21.     The Bankruptcy Court stated that approval for the settlement agreement was not proper because "somebody might object to it. . . . there was going to be 9019 notice." *See* December 14, 2007 transcript, p. 15; lines 18-22, BCD 3404.

22.     At the December 14, 2007 hearing, Appellee Potter stated: "I'm not going to spend a lot of time, effort and money arguing with Mr. Wolff about a settlement." *See* December 14, 2007 transcript, p. 17, lines. 14-16, BCD 3404.

23.     Notice of the settlement pursuant to Fed. R. Bankr. P. 9019 did not go out to creditors on December 14, 2007 as directed by the Bankruptcy Court. A notice without the terms and conditions of the settlement was filed electronically with the Court. (BCD 3338). This deficient notice was never sent out to the creditors pursuant to Rule 9019.

24.     On December 17, 2007, a new notice was filed with the Bankruptcy Court and served on some creditors by regular mail.  This notice was mailed to other creditors, including Advantage, on December 18, 2007.  *See* Certificate of Service dated December 20, 2007, BCD 3347.

25.     Although Plan Committee counsel knew that Elliot Wolff, as representative of one of the two members of the Plan Committee, did not believe that the parties had agreed to a settlement containing all of the terms and conditions, Plan Committee counsel did not disclose this fact to the Court, even though it had filed a Motion to Withdraw.

26.     On December 19, 2007, Advantage filed a detailed objection to the purported settlement.  (BCD  3346).  The objection was signed by Mr. Wolff on behalf of Advantage.

27.     On December 20, 2007, Appellees Potter and Pillsbury filed a Response and Motion to Strike the Objection.  (BCD 3348).

28.     Potter and Pillsbury never served the Response and Motion to Strike on Advantage or Mr. Wolff.

29.     On December 21, 2007, the Court struck the Objection from the record.  (BCD No. 3349).

30.     Because notice of the December 21 hearing was not mailed until December 17 or 18, 2007, and only by regular mail, creditors received, at most, two days to file their objections during the height of the Christmas mailing season.

31.     On December 21, 2007, after striking Advantage's objection, the Court approved the settlement.  (BCD 3351).

32.    At the December 21, 2007 hearing, the Bankruptcy Court was not advised that its own condition precedent to approval of the settlement -- that notice had to be sent to creditors on December 14, 2007 -- had not been met by the parties.

33.    The Bankruptcy Court stated that the evidence on December 14, 2007, demonstrated that the settlement was entered in good faith and was in the best interest of creditors.  *See* December 21, 2007 transcript,  pp. 3-4, lines 6-25, 1-4, BCD  3405.

34.    The "executed" settlement agreement was filed with the Bankruptcy Court on December 27, 2007, six days *after* it was approved by the Bankruptcy Court.   *See* Line Filing Executed Settlement Agreement Regarding Motion to Approve Compromise, BCD  3371.  The document on its face shows that a required signature, that of Mr. Wolff, is not on the document. *Id.*

35.    On December 31, 2007, Elliot Wolff and Advantage filed a Notice of Appeal to this Court (BCD  3372).  That appeal is pending and briefing is now complete.

36.    On January 30, 2008, the Bankruptcy Court issued an Order Granting Emergency Renewed Motion of Shulman, Rogers, Gandal, Pordy & Ecker PA for Immediate Withdrawal as Counsel to the Plan Committee. (BCD 3392).

37.    On January 31, 2008, while the First Appeal was pending, Pillsbury filed the Motion for Declaratory Relief Pursuant to 28 U.S.C. § 2201. ("Declaratory Judgment Motion") (BCD 3393).

38.    On February 12, 2008, Mr. Wolff and Advantage filed their Objection to Motion for Declaratory Relief (BCD 3397), in which they argued:  (A) That the Bankruptcy Court was divested of jurisdiction over issues related to the First Appeal; (B) That the Declaratory Relief

should have been sought in an adversary proceeding; and (C) That the requested relief was not ripe.

39.    On February 13, 2008, Welcome Home, Inc., on behalf of the Plan Committee, filed the Response of Welcome Home, Inc. to Motion for Declaratory Relief Filed by Pillsbury Winthrop Shaw Pittman LLP.  (BCD 3400).  In that Response, Welcome Home asked the Bankruptcy Court to authorize the Plan Committee to retain counsel to represent to represent the Plan Committee in the [First] Appeal and to authorize and direct the Plan Agent to pay a retainer to that counsel.

40.    At a hearing on February 15, 2008, counsel for Mr. Wolff and Advantage argued, *inter alia*, that the Bankruptcy Court no longer had jurisdiction, that the dispute was not ripe, that the dispute could become moot upon the rendering of a decision on the First Appeal.  *See* February 15, 2008 transcript, attached hereto as Exhibit A.

41.    On February 26, 2008, the Bankruptcy Court entered the Declaratory Judgment Order (BCD 3408).  In the Declaratory Judgment Order, the Bankruptcy Court overruled each of the objections raised by Mr. Wolff and Advantage and additionally ruled that the Plan Committee was in breach of the Settlement Agreement.  On the same day, the Bankruptcy Court issued an Order Authorizing Plan Committee to Retain and Pay Counsel.  (BCD 3409).

42.    Mr. Wolff and Advantage noted their appeal from the Declaratory Judgment Order ("this Appeal") on March 6, 2008 (BCD 3412).

12

## V.    ARGUMENT

**A.    The Bankruptcy Court was Divested of Jurisdiction by the Filing of the Notice of Appeal on December 31, 2007 and, Therefore, did not have Jurisdiction to Enter the February 16, 2008 Order.**

On December 31, 2007, Appellants filed a Notice of Appeal from two orders of the Bankruptcy Court, entered on December 21, 2007.  The first order struck the objection filed by Advantage to the purported settlement agreement ("Purported Agreement") among the Plan Committee, Potter and Pillsbury.   The second order approved the Settlement.  In Appellants' Statement of Issues on [First] Appeal (BCD 3378), filed on January 10, 2008, Appellants asked, *inter alia*: "Did the Bankruptcy Court err when it approved the settlement without adequate basis in fact or law?"

On January 31, 2008, despite the pending appeal, and before the first brief had been filed, Pillsbury filed the Declaratory Judgment Motion (BCD 3393), in which Pillsbury and Potter (collectively, "Pillsbury" or "Appellees") sought a determination that the Plan Committee was obligated under the Settlement Agreement to defend the [First] Appeal; that the Plan Committee's failure to defend the Appeal constituted a breach of the Settlement Agreement; and that the Plan Committee was obligated to pay Pillsbury's legal fees if Pillsbury defended the appeal. (Declaratory Judgment Motion, p. 5).  Essentially, the Declaratory Judgment Motion asked the Bankruptcy Court to interpret the Settlement Agreement, the validity of which was under appeal, and to "enforce" the same agreement by ruling that the Plan Committee had breached the agreement.

The general rule is that filing of a good and sufficient notice of appeal immediately transfers jurisdiction of all matters relating to the appeal from the lower court to the appellate court. *See In re Grand Jury Proceedings Under Seal v. United States*, 947 F.2d 1188, 1190 (4th

Cir. 1991). The rule applies equally to an appeal from a bankruptcy court decision as to an appeal from a district court decision. *Kates v. Fox, Rothschild, O'Brien & Frankel (In re Mazzacone)*, 1995 U.S. Dist. LEXIS 3218, at *11(E.D.Pa.); *Cibro Petroleum Products, Inc. v. City of Albany (In re Winimo Realty Corp.)*, 279 B.R. 99, 105 (S.D. N.Y. 2001). The rule is not absolute, however. *In re Grand Jury Proceedings Under Seal v. United States*, 947 F.2d 1188, 1190 (4th Cir. 1991) (notice of appeal does not deprive lower court of jurisdiction to issue orders "in aid of appeal"). Although a number of exceptions to the general rule have been recognized, none of the exceptions apply in this case.

In the bankruptcy context, some general principles have emerged regarding the exact boundaries of divestiture of jurisdiction by pending appeals. Courts have consistently held that a bankruptcy court lacks jurisdiction to vacate or modify an order which is the subject of a pending appeal. *Kates v. Fox, Rothschild, O'Brien & Frankel (In re Mazzacone),* 1995 U.S. Dist. LEXIS 3218, at *11 (E.D. Pa.). Courts have also consistently held that if an issue is raised on appeal, a bankruptcy court cannot reconsider that issue even in the context of another Order. *Id*. Although most courts have also held that bankruptcy courts retain jurisdiction to enforce, implement, and otherwise treat as valid judgments and orders that are the subject of pending appeals, as long as that enforcement and implementation does not require redeciding issues that are on appeal. *Id*. This distinction is especially important in the bankruptcy context, where there are often myriad issues, many totally unrelated and unconnected with the issues involved in any given appeal. *Kates v. Fox, Rothschild, O'Brien & Frankel (In re Mazzacone),* 1995 U.S. Dist. LEXIS 3218, at *13 (E.D. Pa.).

Courts have also recognized a distinction between actions that "enforce" or "implement" an order, which are permissible and acts that "expand" or "alter" that order, which are prohibited.

*Cibro Petroleum Products, Inc. v. City of Albany, (In re Winimo Realty Corp. )* 279 B.R. 99, 105 (S.D.N.Y. 2001).  Any actions that interfere with the appeal process or decide an issue identical to the one appealed are beyond mere "enforcement" and are therefore impermissible.  *Id*. In addition, a trial court retains jurisdiction to act in three different circumstances: (1) when a matter is not related to the issues involved in the appeal; (2) when the order appealed is not appealable or the appeal is clearly frivolous; and (3) when a district court's action would aid in the appeal.  *Bryant v. Bryant*, 175 B.R. 9, 11(W.D. Va. 1994), citing 9 *Moore's Federal Practice*, para. 203.11, pp. 3-45 to 3-55 (2d ed. 1992).  Actions that "aid in the appeal" include the making of clerical corrections in previous orders, *Collin County v. Siemens Bus. Services*, 2006 U.S. Dist. LEXIS 55368 at *4 (E.D. Tex), and entry of written findings shortly after the notice of appeal, *See e.g., Wilson v. Cain*, 1999 U.S. Dist. LEXIS 22662 at *31, n. 14 (E.D. La.).

Other courts have determined that there are four exceptions to the general rule:  (1) a district court retains jurisdiction to entertain a motion to stay a judgment or order being appealed; (2)  a district court retains jurisdiction over matters that are collateral to the appeal, such as the merits of a case when the appeal concerns a preliminary injunction; (3) a district court retains jurisdiction over matters that aid in the appeals process, such as the making of clerical corrections in previous orders; (4) a district court retains jurisdiction to modify preliminary injunctions or enforce the same through civil contempt proceedings.  *See e.g., Collin County v. Siemens Bus. Services*, 2006 U.S. Dist. LEXIS 55368, at * 4 (E.D. Tex.).

Finally, once an appeal is taken, a Bankruptcy Court can not modify the order or "offer guidance."  *See In re Maurice*, 179 B.R. 881, 883 (Bankr. N.D. Ill. 1995).  In this case, the Bankruptcy Court specifically held that its ruling would guide the litigants:

> "By obtaining that declaration [that a failure to defend the appeal would constitute a breach of the settlement agreement], the issues are clarified, making it clear that

15

> a breach will exist for failure to defend the appeal, and that should help guide the
> decision of the Plan Committee as to whether it decides to defend the appeal or
> not. Presumably the declaration that it is obligated under the settlement
> agreement to defend the appeal would encourage it to do so."

February 15, 2008 transcript, pp. 26-27. It is, therefore, clear that the Bankruptcy Court did far

more than "enforce" its December 21, 2007 Order.

The rationale for the rule divesting lower courts of jurisdiction upon appeal is

illuminating. The divestiture rule is founded on concerns of efficiency and the desire to protect

the integrity of the appellate process. Its purpose is to avoid confusion or waste of time from

having the same issues before two courts at the same time. *Cibro Petroleum Products, Inc. v.*

*City of Albany, (In re Winimo Realty Corp. )* 279 B.R. 99, 105 (S.D. N.Y. 2001). In this case,

the assertion of jurisdiction by the Bankruptcy Court while the case was on appeal meant that the

parties were simultaneously arguing about the interpretation and terms of the purported

Settlement Agreement in the Bankruptcy Court while preparing appellate briefs on the validity of

the Order approving that Agreement. In the event that this Court rules that the Settlement

Agreement was improperly approved, all of the resources expended by the Bankruptcy Court, the

parties and this Court to the Declaratory Judgment Motion and the subsequent appeal will have

been for naught. If the Bankruptcy Court had recognized that it lacked jurisdiction over the

Declaratory Judgment Motion, the parties and this Court would not now be faced with two

virtually simultaneous appeals over the validity of a Settlement Agreement and the Order

approving that alleged Agreement.

The Supreme Court has explained that "[t]he filing of a notice of appeal is an event of

jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district

court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident*

*Consumer Discount Co.,* 459 U.S. 56, 58 (1982). Because the Bankruptcy Court was, by the

16

filing of the December 21, 2007 Notice of Appeal, divested of jurisdiction over those aspects of the case involved in the appeal, and because none of the recognized exceptions apply, the Bankruptcy Court did not have jurisdiction to issue the February 26, 2008 Order, which dealt with the same settlement agreement that was the subject of the First Appeal.

**B.     The Bankruptcy Court Erred When it Held that the Plan Committee had Breached the Settlement Agreement.**

In the February 26, 2008 Order, the Bankruptcy Court found that the Plan Committee was "currently in breach of the Settlement Agreement because of its failure to defend the [First] appeal of the Settlement Agreement." That finding was erroneous for a number of reasons.

First, the Bankruptcy Court was divested of jurisdiction by the filing of the Notice of Appeal on December 31, 2007. Courts have consistently held that if an issue is raised on appeal, a bankruptcy court cannot reconsider that issue even in the context of another order. *Kates v. Fox, Rothschild, O'Brien & Frankel (In re Mazzacone),* 1995 U.S. Dist. LEXIS 3218, at *13 (E.D. Pa.). By ruling that the Plan Committee was in breach of the Settlement Agreement, the Bankruptcy Court improperly "redecided" the very issue to be determined in the First Appeal -- whether there was a valid settlement agreement.

Second, the Bankruptcy Court erred because a breach of contract proceeding should have been brought as an Adversary Proceeding rather than as a contested matter. *See In re Parker*, Slip Copy, 2007 WL 1521068 *1 (Bankr. D.D.C., May 21, 2007) (adversary proceeding commenced alleging breach of contract). If the Declaratory Judgment Motion had been brought as an adversary proceeding, Appellants would have been afforded the procedural safeguards associated with such a proceeding. *Matter of Beard*, 112 B.R. 951, 955 (Bnkr. N.D. Ind. 1990). Because these procedural safeguards were not provided, the Declaratory Judgment Motion should have been dismissed. *In re Viney*, 369 B.R. 392, 393 (Bankr. N.D. Ind. 2007) (citing

17

*Matter of Perkins,* 902 F.2d 1254, 1258 (7th Cir. 1990) for the proposition that "a motion seeking relief which the rules require to be sought through an adversary proceeding should be dismissed").

Third, the Bankruptcy Court erred by finding that the Settlement Agreement had been breached solely based on the fact that the Plan Committee had not yet filed a Statement of Issues on Appeal or Designation of the Record.  However, to establish a breach of contract, a plaintiff must demonstrate that "a contract existed, that plaintiffs performed their contractual obligations, that defendants breached the contract and that plaintiffs suffered damages due to the breach." *Belmar v. Garza (In re Belmar)*, 319 B.R. 748, 759-760 (Bankr. D.C. 2004).   Here, Pillsbury never produced any evidence to support its claim and (because this was not an Adversary Proceeding), Appellants were not given an opportunity to refute Pillsbury's position.  In addition to disputing the existence of a contract, Appellants and/or the Plan Committee could have argued that any breach was justified by the resignation of its attorney, which was only approved by the Bankruptcy Court on January 29, 2008, two days before Pillsbury filed the Declaratory Judgment Motion.  Finally, Pillsbury would have been hard pressed to prove damages inasmuch as it has continued to defend the appeal even after the Plan Committee retained counsel.  Notably, both the Plan Committee and Pillsbury filed Briefs in the First Appeal, a duplication of effort caused by Pillsbury to the detriment of all other parties.  Where, as here, the Bankruptcy Court's factual findings "are silent or ambiguous as to an outcome determinative factual question," the District Court must remand the case to the Bankruptcy Court." *Williams v. Brown (In re Air Safety International, L.C.)*, 308 B.R. 90, 95 (S.D. Fla. 2003).

**C.    The Bankruptcy Court did not Have Jurisdiction to Decide the Declaratory
        Judgment Motion Because the Issues Were Not Ripe.**

The doctrine of judicial ripeness requires that courts avoid issuing premature decisions by
ensuring that any controversy presented is "sufficiently direct and immediate."  To determine
whether a case is ripe, courts balance the fitness of the issue for judicial decision with the
hardship to the parties of withholding court consideration. Both prongs must be satisfied before
an Article III court may apply its adjudicative powers to a case's merits.  A case is fit for judicial
decision when the issues are purely legal and when the action in controversy is final and not
dependent on future uncertainties.  *See Simonton Building Products v. Johnson*, 2008 U.S. Dist.
LEXIS 26358, at * 19-20 (N.D. W. Va.) (citations omitted).

In this case, the Bankruptcy Court ruled that the Plan Committee was obligated, by the
Settlement Agreement, to defend the First Appeal and that the Plan Committee had breached the
Settlement agreement by failing to defend the First Appeal.  Because the validity of the
Settlement Agreement was, and is, the subject of a pending appeal, any decision either
interpreting or enforcing the Settlement Agreement was premature.

Furthermore, neither prong of the ripeness test was satisfied.  The case was plainly not
ready for a judicial decision in February because the action was ongoing.  As a result, the
legitimacy of the Bankruptcy Court's February 26, 2008 Order could be entirely undermined by a
decision in the First Appeal.  As to the second prong of the ripeness test, Pillsbury would have
undergone no hardship by waiting for a favorable decision in the First Appeal before attempting
to enforce the Settlement Agreement.  Because Pillsbury has continued to defend the First
Appeal even though the Plan Committee is doing so as well,[2] leaves only one explanation for

---

[2] This is remarkable because Pillsbury stated in the Declaratory Judgment Motion that "neither the Committee nor
Pillsbury would be incurring any material fees or expenses if the Committee announced that it was actively

Pillsbury's eagerness to enforce the Settlement Agreement.  In the Declaratory Judgment Motion, Pillsbury asked the Court to rule that the Plan Committee was obligated to pay Pillsbury's legal fees if Pillsbury defends the First Appeal.  Hence, the only hardship Pillsbury would have endured would have been the deferred gratification of a fee award.  As it is, the Bankruptcy Court declined to rule on the fee issue but reserved all parties' rights regarding the matter.  See Declaratory Judgment Order, p. 2, n.2, BCD 3408.

### D.    Some of the Issues Raised by the Declaratory Judgment Motion are Moot and the Remainder Could Become Moot.

A finding of constitutional mootness reflects a determination that a case or controversy no longer exists within the meaning of U.S. Const. art. III.  *Walker v. Grigsby*, 2006 U.S. Dist. LEXIS 94888, at *5 (D. Md.). To dismiss a case due to constitutional mootness, a court must find that events have occurred that make it impossible to grant any effectual relief.  *Id*.  A party seeking to argue that the case has not become moot must show that it has suffered an actual injury capable of being redressed by a favorable judicial decision.  *Id*., at *6.

In this case, the Plan Committee's alleged failure to defend the First Appeal had become moot by the time the Bankruptcy Court issued its Order on February 26, 2008.  In fact, that issue became moot at the hearing on February 15, 2008, at which time counsel for Appellants agreed, in open court, that Welcome Home, Inc. was authorized to retain counsel to defend the First Appeal.  February 15, 2008  Transcript, pp. 11-12.

The Bankruptcy Court's second ruling, that the Plan Committee had breached the Settlement Agreement, could become moot if this Court determines either that there never was a valid Settlement Agreement or that the Bankruptcy Court's approval of the Settlement

---

defending the appeal, Pillsbury will be required to incur all of the expenses associated with defending the Appeal if the Committee fails to defend the appeal." Declaratory Judgment Motion, ¶ 9.

Agreement was improper. In that case, all of the time, effort and resources that the parties and this Court have devoted to this case will have been wasted. This problem was caused by Pillsbury's impatience and the Bankruptcy Court's erroneous assertion of jurisdiction. The only solution is to reverse the February 26, 2008 Order.

**E.      The Bankruptcy Court Erred by Allowing the Motion for Declaratory Judgment to Proceed as a Contested Matter Rather than as an Adversary Proceeding.**

The Federal Rules of Bankruptcy Procedure distinguish between adversary proceedings and contested matters. *State Bank v. Gledhill*, 76 F.3d 1070, 1077 (10th Cir. 1996). Fed. R. Bankr. P. 7001 enumerates ten classes of actions or proceedings which must be brought as adversary proceedings. *Id.* Those proceedings include "a proceeding to recover money or property, other than a proceeding to compel the debtor to deliver property to the trustee (or other exceptions not applicable here)," Fed. R. Bankr. P. 7001(1) and "a proceeding to obtain a declaratory judgment relating to any of the foregoing" Fed. R. Bankr. P. 7001(9). Under Rule 7001, parties must bring the identified proceedings as adversary matters, rather than as motions or in other procedural forms. *Crump v. U.S.*, 1996 U.S. Dist. LEXIS 5517, at *7 ( D. Col. 1996). Once filed, adversary proceedings are governed by Part VII of the Federal Rules of Bankruptcy Procedure, which incorporates most of the procedural protections of the Federal Rules of Civil Procedure. *Id.*

In this case, the Declaratory Judgment Motion is clearly "related" to the fee dispute between the parties, which in turn was clearly a "proceeding to recover money." The Declaratory Judgment Motion specifically asked the Bankruptcy Court to "enforce the Settlement Agreement by entering an order requiring the [Plan] Committee to pay Pillsbury's attorneys fees incurred in connection with defending the Appeal." (Declaratory Judgment Motion, p. 5). Although Pillsbury "orally modified their request" (February 26, 2008 Order, p. 2,

21

n.2), and the Bankruptcy Court declined to rule on the issue, the fact remains that this was at heart a proceeding to recover attorneys fees, albeit attorneys fees that Pillsbury had not yet earned.

"The basic purpose of the Federal Rules is to administer justice through fair trials…." *Surowitz v. Hilton Hotels Corp*., 383 U.S. 363 (1966).  However, having once circumvented the federal rules by filing its fee request as a motion rather than as an adversary proceeding, Pillsbury employed the same approach here by attempting to recover attorneys fees though a request for Declaratory Judgment, filed as a Motion, rather than the adversary proceeding required by the rules.

**F.    The Bankruptcy Court Erred by Exercising Subject Matter Jurisdiction Over This Declaratory Judgment Proceeding.**

A party invoking the bankruptcy court's post-confirmation jurisdiction must satisfy two requirements.  First, the matter must have a close nexus to the bankruptcy court or proceeding, as when a matter affects the interpretation, implementation, consummation, execution or administration of the confirmed plan and second, the plan must provide for the retention of jurisdiction over the dispute.  *Premium of America v. Sanchez (In re Sanchez)*, 342 B.R. 390, 397 (Bankr. D.C. 2006) (citations omitted).  In this case, interpretation of the Settlement Agreement insofar is it relates to defending the First Appeal, meets none of the requirements for retention of jurisdiction.

In a case involving Appellees' predecessor law firm, the Bankruptcy Court in this very jurisdiction, clearly stated that its post-confirmation jurisdiction "is limited to matters involving the execution, implementation, or interpretation of the plan's provisions, and to disputes requiring the application of bankruptcy law."  *Shaw Pittman v. Shin (In re Shin),* 2004 Bankr. LEXIS 2262, at *5 (Bankr. D.C.) (citations omitted).   In this case, any execution,

implementation, or interpretation is of the provisions of the Settlement Agreement rather than the Plan's provisions, which state nothing about the judicial determination of post-confirmation attorneys fees, let alone defending an appeal of a document that did not even exist at the time the Plan was confirmed.

Furthermore, this dispute must be decided under District of Columbia law rather than bankruptcy law.  A suit to recover attorneys fees is no different than any other contract action and is governed by traditional principles of contract law.  *Treese v. Carr*, 1989 U.S. Dist. LEXIS 7954, at *4 (D.D.C).  Once a contractual entitlement to attorneys fees has been ascertained, the determination of a reasonable fee award is for the trial court in light of the relevant circumstances.  *Ideal Elec. Security. Co. v. International Fidelity Ins. Co.,* 129 F.3d 143, 146 (D.C. Cir. 1997).[3]  Finally, there is no need for the application of bankruptcy law in resolving this fee dispute.  Therefore, the Bankrutpcy Court did not have subject matter jurisdiction over this matter.

## VI.    CONCLUSION

Pursuant to Fed. R. Bankr. P. 8013, a district court may affirm, modify or reverse the bankruptcy court's decision, or remand for further proceedings.  *Vasconi v. Credit Manager Assoc. of Cal.*, 1997 U.S. Dist. LEXIS 24177, at * 5 (N.D. Cal.).  In this case, reversal is the appropriate remedy because the Bankruptcy Court erred when it assumed jurisdiction over the Declaratory Judgment Motion.  Federal Courts are under a continuing duty to satisfy themselves of their jurisdiction before proceeding to the merits of any case. *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1049 (3d Cir. 1993).  Because the Bankruptcy Court's rulings were erroneous on

---

[3] Ultimately, the reasonableness of any fees must be tested against Rule 1.5(a) of the District of Columbia Rules of Professional Conduct and the eight factors identified therein, as well as the decision of the District of Columbia Court of Appeals in *Connelly v. Swick & Shapiro*, 749 A.2d 1264 (D.C. 2000).

a number of jurisdictional matters – the divestiture of jurisdiction of a matter under review,

ripeness, mootness, and subject matter jurisdiction, the Order on Motion for Declaratory Relief

Pursuant to 28 U.S.C. § 2201 and to enforce settlement agreement should be reversed.


Dated:  May 23, 2008                    Respectfully submitted


                                        /s/ Janet M. Nesse
                                        Janet M. Nesse  Bar No. 358514
                                        Lawrence P. Block  Bar No..452190
                                        Stinson Morrison Hecker LLP
                                        1150 18th St., NW, Suite 800
                                        Washington, DC 20036
                                        Telephone: (202) 785-9100
                                        Fax:  (202) 785-9163

Exhibit A

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - - x
In Re:                             :
                                   :
The GREATER SOUTHEAST COMMUNITY    :
  HOSPITAL FOUNDATION, INC., and   :
  GREATER SOUTHEAST COMMUNITY      :
  HOSPITAL CORPORATION             :
                                   :
        Debtor                     : Case No. 99-01159
                                   :
        (Chapter 11        )       :
                                   : Washington, D.C.
- - - - - - - - - - - - - - - - x February 15, 2008


            TRANSCRIPT OF MOTION TO COMPEL
       BEFORE THE HONORABLE S. MARTIN TEEL, JR.
            UNITED STATES BANKRUPTCY JUDGE


  APPEARANCES:

            On behalf of Advantage Health Plan, Inc.
              and Elliott R. Wolff:

                JANET NESSE, ESQ.

            On behalf of Patrick Potter and
              Pillsbury Winthrop Shaw Pittman, LLP:

                PATRICK POTTER, ESQ.
                JERRY HALL, ESQ.

            On behalf of Welcome Home, Inc.,
              and Stanley Zupnik:

                NELSON COHEN, ESQ.


Proceedings recorded by the Court, transcript produced
By Pro-Typists, Inc., 1012-14th Street, N.W., Suite 307,
Washington, D.C. 20005, 202-347-5395, www.pro-typists.com
B2398/bf

2

**P R O C E E D I N G S**

1

2       THE CLERK:  All rise.  By order this Honorable

3  Court is again in session, the Honorable S. Martin Teel,

4  Jr., presiding.  Please be seated and come to order.

5       The case on this afternoon's calendar is 99-1159,

6  Greater Southeast Community Hospital Foundation

7  Corporation, et al.  Matter before the Court is a Motion

8  to Compel Enforcement of the Settlement Agreement for

9  Declaratory Relief, filed by Patrick Potter.

10      If the parties would please come forward and

11 state your names for appearance.

12      MS. NESSE:  Janet Nesse, Your Honor.  Good

13 afternoon, representing Advantage Health Plan, Inc., and

14 Elliott Wolff.

15      MR. POTTER:  Good afternoon, Your Honor.  Patrick

16 Potter and Jerry Hall on behalf of my firm, Pillsbury.

17      MR. COHEN:  Good afternoon, Your Honor.  Nelson

18 Cohen on behalf of Welcome Home, Inc., and Stanley Zupnik.

19      THE COURT:  Mr. Potter.

20      MR. POTTER:  Thank you, Your Honor.  I intend to

21 be brief, in part because the issue before the Court has

22 been largely -- it was largely briefed when we were last

23 before the Court and certainly briefed again for today, and

24 it was also argued and commented on, I think, at length by

25 the Court in Your Honor's ruling the last time we were --

3

1    excuse me -- the last time we were before you.  And I'm
2    happy to answer any questions Your Honor may have about the
3    underlying allegations regarding what we believe to be --
4            THE COURT:  Let's take the procedural issue
5    first.  They say it needs an adversary proceeding.
6            MR. POTTER:  It's not an action to recover money,
7    Your Honor.  The rules -- the language in the rule talks
8    about an action to recover money.  This is not an action to
9    recover money.  This is an action to help --
10           THE COURT:  Did you file a reply to their
11   opposition?
12           MR. POTTER:  No.
13           THE COURT:  Okay.  I just want to make sure I
14   didn't miss something.  Go ahead.
15           MR. POTTER:  It's not an action to recover money.
16   That's my response.
17           THE COURT:  All right, what's next?  How about
18   paragraph 15.  It says -- paragraph 15 of what you're
19   trying to declare entitles you to attorneys fees.
20           MR. POTTER:  Excuse me, Your Honor, can grant
21   that which we request --
22           THE COURT:  Let me read it so we're on the same
23   page.  I'm quoting from your motion at page 2, quote, "In
24   any litigation concerning breach of this agreement the
25   prevailing party's reasonable attorney fees and costs shall

1   be paid by the losing party," unquote.  That's your motion

2   quoting paragraph 15 of the settlement agreement.  And I

3   guess the question is, is the appeal that is now pending in

4   the District Court litigation concerning breach of the

5   settlement agreement.

6           MR. POTTER:  I'm sorry, Your Honor.

7           THE COURT:  Is the appeal that is now pending in

8   the District Court, quote, "litigation concerning breach of

9   the settlement agreement," unquote, within the meaning of

10  paragraph 15 of the settlement agreement?

11          MR. POTTER:  Your Honor, our position is that --

12  and I'm sorry, Your Honor, I just don't -- either I'm not

13  hearing you or I don't understand the question.  I

14  apologize.  I'm not going to try to answer it because --

15          THE COURT:  Paragraph 15 of the settlement

16  agreement said --

17          MR. POTTER:  Fifteen of the settlement agreement,

18  "Future litigation."

19          THE COURT:  In any litigation.  It didn't say

20  "future litigation."  It said, "In any litigation

21  concerning breach of this agreement."

22          MR. POTTER:  Yes, Your Honor.

23          THE COURT:  "The prevailing party gets attorneys

24  fees."

25          MR. POTTER:  That's exactly what it says.

1        THE COURT: And the question is, is an appeal

2  from an order approving the settlement agreement, quote,

3  "litigation concerning breach of the agreement," unquote.

4        MR. POTTER: No.

5        THE COURT: Then how are you entitled to

6  attorneys fees?

7        MR. POTTER: I may not be entitled to attorneys

8  fees, Your Honor. I'm not asking the Court to order the

9  payment of any attorneys fees today. I may not be --

10        THE COURT: You're asking me to declare that

11  you're entitled to attorneys fees, correct?

12        MR. POTTER: If you look at the proposed order,

13  Your Honor, that we submitted, what we're asking the Court

14  to declare is that the Committee is obligated, pursuant to

15  -- and the order doesn't say this, I'm telling the Court --

16  based upon paragraph 14 we're asking the Court to find that

17  the Committee is obligated to defend the appeal.

18        THE COURT: No, it also --

19        MR. POTTER: The Committee has breached and

20  continues to breach the settlement agreement by failing to

21  defend the appeal.

22        THE COURT: That's one element of it. If you

23  look at page 2 of your proposed order --

24        MR. POTTER: I think that the Court -- to the

25  extent that the Court is interpreting our request today to

1   order the payment of fees, then to orally modify the

2   document --

3           THE COURT:  No, I'm not asking that.  Paragraph

4   (c) of your proposed order, the last paragraph (c), reads,

5   quote, "Pillsbury is entitled --" you want me to declare

6   that, quote, "Pillsbury is entitled to recover its fees and

7   expenses if Pillsbury defends the appeal," unquote.  And

8   I'm suggesting to you that there's no basis for

9   interpreting paragraph 15 of the settlement agreement as

10  covering attorneys fees incurred in defending the appeal.

11  Because the appeal is not litigation regarding a breach of

12  the settlement agreement.

13          MR. POTTER:  Your Honor, our position is that the

14  Committee, by not pursuing the appeal, is breaching the

15  agreement.  So Step 1 would be to determine the existence

16  of a contractual obligation and a breach of that

17  obligation.  We would have to come back before Your Honor

18  at some point in the future after the appeal has run its

19  course in the event that Pillsbury has damages, and if

20  we're seeking to recover money through the vehicle of an

21  adversary proceeding, I believe, we would have to --

22          THE COURT:  Ms. Nesse, don't shake your head,

23  please.

24          MR. POTTER:  Pardon me?

25          THE COURT:  Ms. Nesse was shaking her head.

1       MS. NESSE:  I apologize to the Court for any

2   rudeness either to the Court or to counsel.

3       THE COURT:  Thank you.  Go ahead, Mr. Potter.

4       MR. POTTER:  That's the way I see it, Your Honor.

5   That there's a contractual obligation under paragraph 14 of

6   the settlement agreement, the further assurances to take

7   actions.  "Each of the parties to this agreement agree to

8   execute and deliver --" I'm reading from paragraph 14 for

9   the record, from the settlement agreement -- "Each of the

10  parties to this agreement agree to execute and deliver to

11  the other parties such other documents, instruments and

12  writings reasonably necessary to effectuate this agreement

13  and shall undertake such other actions to cause the

14  consummation of the transactions contemplated by this

15  agreement."

16      THE COURT:  I'm not disputing that a failure to

17  defend the appeal would be a breach of the settlement

18  agreement.  Paragraph 15 says that you would get attorneys

19  fees in any litigation concerning that breach, not get

20  attorneys fees that were incurred because there was a

21  breach.

22      MR. POTTER:  I'm not sure I understand the

23  distinction, I'm not sure it's an issue that needs to be

24  necessarily resolved today in the context of our request,

25  which is primarily focused upon seeking a declaration from

1  the Court that the Committee, by not pursuing the appeal

2  and supporting us as the co-proponent of the 9019 on the

3  appeal is in breach.  That's the declaration that we're

4  seeking today.

5        If subpart (c) in the order needs to be stricken

6  - and so be it, or if it needs to be broadened to say we're

7  entitled to recover our fees and expenses if we defend the

8  appeal and incur damages and we're entitled to recover them

9  under the terms of the settlement agreement, then so be it.

10  I don't think I care one way or the other, so long as the

11  record is clear that we're preserving our rights.  I think

12  you could strike paragraph (c) and leave the recovery issue

13  for another day, or you could expand on it to basically say

14  our rights are whatever they are under the terms of the

15  agreement to recover fees.

16        THE COURT:  All right.  Thank you.

17        MS. NESSE:  Your Honor, I think that there are

18  several different procedural problems with what has been

19  requested here, without even reference to the merits.  The

20  first one, with respect to the declaration --

21        THE COURT:  Does Mr. Cohen want to be heard at

22  this juncture?

23        MS. NESSE:  I beg your pardon, Mr. Cohen.

24        MR. COHEN:  Very well, Your Honor

25        THE COURT:  I assume you're on the same -- you

1    may not be on the same side as Mr. Potter entirely, but I

2    think you're in many ways on the same side.

3                MR. COHEN:  I've had a difficult time trying to

4    figure out on which side to sit, Your Honor.

5                MS. NESSE:  I beg your pardon, Your Honor,

6    because the Committee's address didn't address this.

7    I assumed they weren't addressing it.

8                MR. COHEN:  Your Honor, Nelson Cohen on behalf of

9    both Mr. Zupnik and Welcome Home, Inc.  As indicated or

10   stated in our papers, Your Honor, we do not represent the

11   Committee.  We represent Welcome Home, Inc. and Mr. Zupnik,

12   who is its corporate designee on the Committee.  Mr. Zupnik

13   is, we believe, based upon our review of the applicable

14   papers, the only disinterested member of the Committee

15   which remains.  It is a two-person committee, Mr. Zupnik

16   and Mr. Wolff.  Mr. Wolff is clearly not disinterested,

17   since he is the appellant in this matter.  Mr. Zupnik, as

18   set forth in our papers, has on two occasions attempted to

19   call a meeting of the committee so that Mr. Wolff could

20   declare himself to be in a position of a conflict of

21   interest, which would then allow Mr. Zupnik to retain

22   counsel to defend the appeal.

23               THE COURT:  What position do you take regarding

24   the motion filed by Mr. Potter and his law firm?

25               MR. COHEN:  The only position we take, Your

1    Honor, is that if the Court grants the relief which we have
2    requested, namely, to allow Mr. Zupnik to retain counsel --
3    retain and pay counsel on behalf of the Committee, then
4    clearly the Committee could then not be in breach of the
5    agreement and Mr. Potter would not be entitled to attorneys
6    fees and, indeed, may not even have to incur any attorneys
7    fees with respect to that.  But we are at a position where
8    we have a dilemma, so to speak, in that no one on their own
9    has the authority to act for the Committee.

10            Your Honor, I think, at the last hearing -- and
11    we've cited to the transcript -- certainly I thought should
12    have been heard loud and clear by all the parties with
13    respect to the Committee does have an obligation to defend
14    this appeal but it is caught in a procedural quagmire and
15    we're looking to the Court to provide some guidance,
16    assistance and, indeed, an order allowing the Committee to
17    retain counsel and defend the appeal.

18            THE COURT:  Thank you.

19            MR. COHEN:  Thank you, Your Honor.

20            THE COURT:  Thank you, Ms. Nesse, for letting
21    Mr. Cohen go first.

22            MS. NESSE:  Of course.  Just so the record is
23    clear, I on behalf of Mr. Wolff and Mr. Wolff on behalf of
24    himself has advised the Committee that -- has advised
25    Committee counsel before Mr. Fowler withdrew and has also

1   advised Mr. Zupnik's counsel that we think that the

2   Committee should retain counsel and that seems very clear.

3   And it seems also very clear that Mr. Wolff will not be

4   involved in the selection of the counsel and we've said it

5   in writing, so the Committee needs to retain counsel and,

6   in fact we attached to our response to the motion for

7   declaratory relief, we filed, with Mr. Potter's consent,

8   an application for an extension of time of the briefing

9   schedule in the District Court.

10          And as one of the grounds for that certainly was

11   the grounds that the transcripts had not yet been prepared

12   and transmitted, but the other ground was that -- I'm going

13   to read directly from the order so that there is not a

14   misunderstanding, that's Exhibit A to our filing.   It

15   specifically says that "this extension is also reasonable

16   in light of the recent order granting emergency renewed

17   motion of Shulman Rogers for immediate withdrawal as

18   counsel to the Plan Committee dated January 29th, 2008.

19   Although the Plan Committee is in the process of retaining

20   new counsel, this has yet to occur."

21          So we filed the application in part to protect

22   the rights of the Plan Committee and to avoid this very

23   problem, and we think the Plan Committee needs to retain

24   counsel and have counsel do whatever it is that counsel

25   needs to do.

1          THE COURT:  And as of today, you're acknowledging

2    that Welcome Home, Inc. is authorized --

3          MS. NESSE:  On behalf of the Plan Committee.

4          THE COURT:  On behalf of the Plan Committee to

5    hire counsel.

6          MS. NESSE:  Yes.

7          THE COURT:  I think that takes care of

8    Mr. Cohen's concern.

9          MS. NESSE:  On the issue of the motion as filed,

10   I think that there are a number of problems.

11         First of all, we all appear to be in agreement

12   that if the settlement were approved and were approved

13   properly and were effective, it would be a contract.  And

14   effectively what Mr. Potter is attempting to do here is to

15   bifurcate a breach of contract action into a contested

16   matter in an adversary proceeding instead of simply

17   treating it as an adversary proceeding.

18         He's asking for a declaratory judgment that

19   there's a breach of a contract and then says he's going to

20   come back at some later time, if appropriate, to determine

21   what the amount of damages would be.  And then he says that

22   because he's not at this moment asking for a recovery of

23   money or property that this does not have to be an

24   adversary proceeding.  But in fact, Your Honor, it is.

25   It's a breach of contract issue.  Has the Committee done

1    something to breach the contract.  And it's a factual

2    issue.  Has the Committee done something to breach the

3    contract.

4         And given the fact that there has been an

5    extension of time for the filing of appellate briefs,

6    there's a question of, a, if there was a breach and if

7    there were any damages, and also, of course, the question

8    that the Court raised under the attorneys fees paragraph

9    about whether the attorneys fees are actually due and

10   owing.  But those are all matters that should be brought

11   through an adversary proceeding at the time that it's ripe.

12        Secondarily, Your Honor, this is not just a

13   motion to enforce a settlement agreement, it's an action

14   for damages and for a determination and interpretation by

15   the Court of what the settlement agreement means.  And

16   accordingly, we believe, Your Honor, that there is a second

17   procedural problem, as we set out in our objection to the

18   motion, which is that the Bankruptcy Court has been

19   divested of the authority for this kind of relief.

20        In support of that we cited the case of In re

21   Maurice at 179 Bankruptcy Reporter, 881, it's actually a

22   Northern District of Illinois case, which referred to the

23   question of whether a court can not only modify an order

24   that's on appeal but provide guidance as to what that order

25   means.  And the very least that is being asked for is a

1   provision of guidance and, in fact, what is being asked for

2   is for a determination on the merits of a secondary

3   proceeding, a breach of contract proceeding, based upon an

4   interpretation of the settlement agreement.  So we think,

5   Your Honor, that while the appeal is pending this level of

6   relief is really not appropriate.

7           And thirdly, Your Honor, we have a series of

8   questions.  The first one is what you could call the

9   ripeness argument, which is, is there really a breach?

10  Have there been any damages?  Is this something that's even

11  ripe for the Court to review and to decide on?  And the

12  question of whether there is a breach is not ripe at this

13  time either in the sense that, Your Honor, the entire

14  substance of the appeal is the question of whether the

15  settlement was, a, properly answered and, b, properly

16  approved by this Court.

17          If the settlement agreement has not been properly

18  approved by the Court, then by definition there could be no

19  breach of the settlement agreement and until that is

20  determined not only can you not determine whether there is

21  a valid and enforceable contract, Your Honor, but there is

22  also a question about who's the prevailing party.  I don't

23  know how one could possibly determine who the prevailing

24  party was until the appeal is resolved and it's determined

25  who is the prevailing party.

1          And so, Your Honor, for a number of both

2   procedural and substantive reasons, we believe that there

3   is no basis for this motion at this time.  If in fact what

4   Mr. Potter wants is what he says he wants, which is the

5   Committee to do what he believes they're supposed to do

6   under the order, I believe we have clarified that as

7   clearly as we possibly can.  I filed in my motion, which he

8   signed on to, to protect any rights that the Committee

9   might have.  Mr. Cohen now is very clear that his client,

10  on behalf of the Committee, can retain counsel.

11          And all of the other complicated questions of was

12  there a breach, was there a valid agreement, what are the

13  damages for that breach, could attorneys fees be a damage,

14  Your Honor, I think are not procedurally properly before

15  the Court and are also not ripe for determination and,

16  furthermore, need not be determined at this time.

17          And so accordingly, Your Honor, we believe that

18  everything requested in the motion that is pertinent at

19  this time is really only the issue of retaining counsel,

20  which I think has been fully taken care of and I think all

21  the rest of the matters are not properly before the Court

22  either procedurally or substantively at this time.

23          MR. POTTER:  Your Honor, I don't want to dwell on

24  the point because it seems that I guess we've nailed it

25  down, but before we walked into the Court today certainly I

1  didn't know, and it appears that Mr. Cohen and his client
2  didn't know, that which was so clear that they had -- that
3  is, Mr. Zupnik and -- and _____ have the ability to go
4  out and retain counsel for the Committee for the purposes
5  of participating in this appeal.  I just want the record to
6  reflect that just because the assertion, as it was
7  indicated in a pleading filed with the U.S. District Court
8  which we then understood at the time to be accurate, the
9  assertion that the Committee was out looking for counsel,
10  is effectively what the phrase says, "The Committee's out
11  looking for counsel," it turns out in fact the Committee
12  was not out looking for counsel, at least not according to
13  the pleadings filed by Mr. Zupnik and his company and his
14  counsel.  So this is, I think it's a significant
15  development, number one, and it's news to me and Mr. Hall
16  and our firm.
17          I just want to quickly touch upon the three
18  points raised by Ms. Nesse.  She argues that there's a rule
19  against -- that somehow Rule 7001 prohibits you from
20  bifurcating a dispute into pieces, one part of which might
21  be resolved pursuant to a contested matter and one part of
22  which might be resolved pursuant to an adversary
23  proceeding, and I don't think that's what Rule 7001 says at
24  all.  Either you fit within -- either the dispute fits
25  within the pigeonhole that's specifically set up in

1   Rule 7001 or it doesn't.

2        And certainly, Your Honor, by the next to last

3   number -- I think it's number 9 in 7001, by stating that a

4   declaratory judgment with respect to any of the foregoing

5   must also be brought by an adversary proceeding implicitly

6   suggests that there may be declaratory judgment-type

7   matters that would not need to be brought by way of an

8   adversary proceeding, they could be brought by contested

9   matter.  So I don't know why it's so troubling as a matter

10  of law to grapple with the notion that a dispute or -- an

11  overall dispute that may have different disputes within it

12  might be broken up into a contested matter and to an

13  adversary proceeding.  So I don't think that argument

14  should persuade the Court.

15       Remember, what we're asking for today is if the

16  Committee doesn't join us as it did in the 9019 on the

17  appeal, that the Committee will be in breach.  That's

18  fundamentally all we're asking for today, Your Honor.

19       The second argument by Advantage is that we're

20  asking the Court -- I don't know how to characterize the

21  argument where you start over here and you end up over

22  here.  We're asking the Court to deal with the agreement.

23  And the case law where you end up at the end of the

24  argument by counsel was with respect to an order.  I mean,

25  I think the Court is not fooled by that.  We're not asking

1   the Court to modify an order.  We are not asking the Court

2   to modify any orders.

3           Let's assume instead of a settlement agreement,

4   what was subject to appeal was a judgment.  There's no

5   reason why, absent a stay pending appeal, we couldn't go

6   out and collect on that judgment.  There's no stay, Your

7   Honor, and we should be able to continue to deal with the

8   underlying merits of the agreement.  Even if we were asking

9   for an interpretation, we're entitled to do that in the

10  absence of a stay pending appeal.

11          The final argument was ripeness, and I think the

12  argument is misguided.  The argument is that ripeness is a

13  function of who wins on appeal.  Ripeness of our argument.

14  Our argument is seeking a declaratory judgment.  If

15  somebody does something, then they're going to be in

16  breach.  That's all we're asking for.

17          And the argument that "You can't possibly know

18  that, Your Honor, until we go through the entire appellate

19  process and figure out who's going to win on appeal,"

20  doesn't address the question of you have an unstayed

21  settlement agreement right now and whether someone is or is

22  not in compliance right now under an unstayed settlement

23  agreement.  They either are in compliance or they aren't in

24  compliance.  And Your Honor can absolutely --

25          THE COURT:  I'm sorry, they either are -- say it

1  again?

2       MR. POTTER:  Either a party or the parties to the

3  settlement agreement are in compliance with an unstayed

4  settlement agreement, or they're not.  Right?  And they'll

5  either take actions that are in compliance that are real,

6  we got a real-live pending appeal.  It's not theoretical.

7  It has deadlines that have already come and gone that the

8  Committee did not satisfy, Your Honor.  The Committee did

9  not file a designation of record.  The Committee did not

10  put in a statement of issues on appeal.  The Committee

11  hasn't done anything relative to the appeal.  This is a

12  real live dispute.  It's not theoretical, and ripeness is

13  not a function of whether the settlement agreement, which

14  is unstayed, survives appeal.  It's a function of whether

15  the parties are complying with the terms of it right now.

16       Let's assume that the settlement agreement that

17  the Court had -- this settlement agreement.  This

18  settlement agreement required the Committee to pay my law

19  firm $130,000.00, I think the number was.  By a certain

20  date.  Well, let's assume that the Committee failed to make

21  that payment, refused to make the payment.  That's a real,

22  ripe issue.  And I would be able to come before Your Honor,

23  in the absence of a stay pending appeal, and ask the Court

24  to compel the Committee to make the payment.  The

25  settlement agreement required me to turn over certain books

1   and records, which I did.  If I failed to do that, then I

2   would expect this Court would be in a position not to wait

3   to see whether the settlement agreement is approved on

4   appeal, but the issue would be ripe.  And I don't see how

5   any other breach of the agreement should be treated any

6   differently than those ones which are easier to get your

7   mind around, than whether a failure to participate in the

8   appeal itself constitutes a breach under Section 14.

9           So I think the ripeness issue is not a function

10  of who's ultimately going to prevail, but whether the

11  parties today, under an unstayed settlement agreement, are

12  or are not complying with the settlement.

13          THE COURT:  All right.

14          MR. POTTER:  Thank you, Your Honor.

15          MS. NESSE:  Only very briefly, Your Honor.  What

16  Mr. Potter now says he wants is very different from what

17  was set out in either the motion or in the order.  If what

18  he wants is to make sure the Committee has retained

19  counsel, I would suggest there's a very simple way to do

20  that.  The Committee has asked for permission to retain

21  counsel, the Committee can retain counsel, and everything

22  else is just not what he asked for, so I don't see --

23  I mean, we believe very strongly that it would be

24  procedurally inappropriate to grant this relief at this

25  time, but having said all that if what he wants is what he

1   says he wants, to make sure that the Committee retains

2   counsel, then let's do that.

3           And if at some point he wants to sue for breach

4   of contract, saying that because the Committee didn't

5   retain counsel until, you know, February 20th instead of

6   February 10th, he can do that, and if the Court determines

7   at that point, upon findings of fact, that there's a breach

8   of contract and there's damages, then we can deal with that

9   at a later point.  But if in fact what's wanted now is the

10  very limited relief to make sure that the Committee enters

11  an appearance and obtains counsel, I think that that is

12  exactly what Mr. Potter is going to get today and that's

13  all that should be authorized.

14          And there is no need to go on to a flight of

15  fancy into all of these other things, and I do not think

16  that it is at issue or appropriate at this time or

17  necessary -- I mean, getting right to it, not necessary,

18  because if what's being asked for is being done, then I

19  think everybody should leave the courtroom very happy

20  today: Mr. Wolff that everybody now understands what saying

21  the Committee could retain counsel meant; Mr. Zupnik that

22  he's not going to be in peril if on behalf of the Committee

23  he retains counsel; and Mr. Potter and his law firm that

24  they will have their allies represented by counsel in the

25  course of the appeal, and I think that's all that needs to

1    be done today and I would suggest that perhaps that would

2    be all that the Court should do today, and we would have

3    presumably accomplished what everybody came for.

4              THE COURT:  Thank you.  Nothing further?

5              MR. POTTER:  Pardon me?

6              THE COURT:  Nothing further?  My hearing's gone

7    bad, too.  Nothing further?

8              MR. POTTER:  Well, Your Honor, I don't think I

9    need to say, which I hope is obvious, I disagree with the

10   position that I'm now asking for something different, other

11   than to the narrow extent that I've articulated in the

12   order how it could be modified to eliminate the issue of

13   seeking a recovery, which I think would require striking

14   paragraph (c) and striking the second of the two Order

15   paragraphs.  Otherwise, I'd ask the Court to enter the

16   order and I think that the procedural arguments that have

17   been raised as impediments to granting the order should be

18   overruled.

19             MR. COHEN:  Your Honor, if I can just be heard

20   very briefly.

21             We raised, you know, two concerns -- retention of

22   counsel and payment of counsel.  I think I heard Ms. Nesse

23   say that they had no opposition to that; indeed, they

24   consented to that.  And all I would simply request is that

25   so Mr. Zupnik and American Home can retain counsel and find

1    someone to represent the Committee in this appeal, that

2    whatever order the Court enters expressly state that

3    American Home and Mr. Zupnik, on behalf of the Plan

4    Committee, is authorized and even directed to retain

5    counsel to represent it -- to retain and pay counsel to

6    represent it in the appeal.

7            Thank you.

8            THE COURT:  Ms. Nesse, any response to that

9    request?

10           MS. NESSE:  Already consented.  They filed a

11   response, we consent to the relief that they requested in

12   their response that was included in the response.  We're in

13   agreement.  We don't oppose it.

14           THE COURT:  I'll enter an order saying that

15   Mr. Zupnik's firm -- was it Welcome Home, Incorporated?

16           MR. COHEN:  Yes, Your Honor.

17           THE COURT:  As a member of the Plan Committee, is

18   authorized on behalf of the Plan Committee to retain

19   counsel and to make payment from Plan Committee funds for

20   the employment of such counsel.

21           MS. NESSE:  Your Honor, the one thing I do want

22   to make clear is that we have stated on the record that we

23   believe that Shulman Rogers has a conflict in this case,

24   and that would be -- the one exception to that, I have no

25   idea what the Plan Committee plans to do, but we would

1   oppose the hiring of Shulman Rogers that is a fact witness

2   and was a party to the very matters complained of in this

3   Court.

4          So I have no idea that they're thinking about

5   rehiring Shulman Rogers to do this, but I just do want to

6   make that clear, that we believe that there is a conflict

7   in Shulman Rogers representing the Plan Committee on the

8   appeal.  So I just want to clarify -- we said that the last

9   time, we said that when they tried to withdraw, and I just

10  want to make that clear on the record again.

11          MR. COHEN:  Your Honor, that should not be an

12  issue.

13          THE COURT:  You're willing to carve Shulman

14  Rogers out of the order?

15          MR. COHEN:  Yes, Your Honor.

16          THE COURT:  Can you prepare the order, please?

17          MR. POTTER:  Yes, I will, Your Honor.

18          THE COURT:  That's the order as to Mr. Cohen's

19  concerns, not Mr. Cohen's client's concerns.

20          With respect to the main motion that was heard

21  today, the motion for declaratory relief filed by Advantage

22  Health Plan -- let me start over again.  With respect to

23  the main motion that was on for hearing today, the motion

24  for declaratory relief filed by Pillsbury Winthrop Shaw

25  Pittman, LLP, the Court will grant that motion in part, for

1  the following reasons.

2       The facts are not in dispute.  The Court approved

3  a settlement agreement between the Plan Committee and

4  Pillsbury and Mr. Potter in his capacity as former plan

5  agent.  They're the two movants here.  They seek to enforce

6  the settlement agreement by obtaining declaratory relief

7  under 28 U.S.C., Section 2201.  The Court's order approving

8  the settlement agreement was appealed and has not been

9  stayed.  Unless and until approval of the settlement

10  agreement is set aside, the Plan Committee is bound to the

11  terms of the settlement agreement.  Paragraph 14 of the

12  settlement agreement required the Plan Committee to, quote,

13  "undertake such other actions to cause the consummation of

14  the transactions contemplated by this agreement," unquote.

15  Paragraph 15 provided that, quote, "In any litigation

16  concerning breach of this agreement, the prevailing party's

17  reasonable attorney's fees and costs shall be paid by the

18  losing party," unquote.

19       An appeal was taken from the order approving the

20  settlement agreement by Elliott Wolff and Advantage Health

21  Plan, Incorporated.  Advantage Health Plan, Incorporated is

22  a member of the Plan Committee.  The other member is

23  Welcome Home, Incorporated.

24       So far the Plan Committee has not defended the

25  appeal.  Its former counsel withdrew from representing the

1   Committee.  The Committee did not file a designation of the

2   appellate record, and the deadline for it doing so has now

3   passed.  The Committee did not file a statement of the

4   issues on appeal, and the deadline for that has also now

5   passed.  Briefs are now due February the 28th, 2008, but

6   that time has been extended to -- or at least there's been

7   a motion filed to extend it to March the 13th, 2008.  I

8   think it's been agreed to.  In any event, it's whatever it

9   is as reflected by the record in the District Court.

10          Title 28, Section 2201 authorizes the Court to

11  declare the rights and other legal relations of the

12  parties.  A case of actual controversy exists as to whether

13  the Committee is obligated to defend the appeal because

14  there has already been a failure to defend the appeal.  It

15  may be that the Plan Committee will now hire counsel and

16  the issue will be academic with respect to the future if

17  the Plan Committee does defend the appeal from this point

18  forward.  But Pillsbury and Mr. Potter were entitled to

19  bring their motion to obtain a declaration to clarify that

20  a failure to defend the appeal would constitute a breach of

21  the agreement and any past failure to defend the appeal was

22  a breach of the agreement.

23          By obtaining that declaration, the issues are

24  clarified, making it clear that a breach will exist for

25  failure to defend the appeal, and that should help guide

1    the decision of the Plan Committee as to whether it decides

2    to defend the appeal or not.  Presumably the declaration

3    that it is obligated under the settlement agreement to

4    defend the appeal would encourage it to do so.  So the

5    Court has no hesitation in concluding that there's an

6    actual case or controversy that warrants declaratory relief

7    regarding whether this would constitute a breach of the

8    settlement agreement; namely, whether a failure to defend

9    the appeal would be a breach of the settlement agreement.

10            Paragraph 14 of the settlement agreement required

11    the Plan Committee to undertake such other actions to cause

12    the consummation of the transactions contemplated by the

13    agreement.  That necessarily includes defending the appeal,

14    because if the appeal were not to be defended and the

15    agreement were to be set aside, there would have been a

16    failure to take actions to cause the consummation of the

17    transactions because they'd be set aside.  Now, of course,

18    if the appeal is defended either by Pillsbury and

19    Mr. Potter or by the Plan Committee and the approval of the

20    settlement agreement is upheld, then the settlement

21    agreement would be protected from being set aside and that

22    would permit the consummation of the transactions to remain

23    standing.  It's the failure to defend that could result in

24    the settlement agreement perhaps being set aside and the

25    consummation being set aside, which is contrary to what the

1    parties agreed to.  So the Court concludes that it is

2    appropriate to grant the requested declaration that the

3    Plan Committee is obligated to defend the appeal under the

4    terms of the settlement agreement.

5           It is also appropriate to declare that the

6    Committee has breached the settlement agreement and will

7    continue to breach the settlement agreement by reason of

8    any failure to defend the appeal.

9           The final request was to declare that Pillsbury,

10   meaning the Pillsbury law firm and Mr. Potter, are entitled

11   to recover their fees and expenses if they defend the

12   appeal.  To the extent that the Plan Committee steps in and

13   defends the appeal there would not be any breach, so the

14   request is overbroad to begin with.  But beyond that, it's

15   not at all clear that Paragraph 15 authorizes the recovery

16   of attorneys fees other than in litigation that itself

17   concerns breach of the settlement agreement.

18          It may very well be that if the Plan Committee

19   were not to defend the appeal and the Pillsbury law firm

20   and Mr. Potter were forced to defend it they would incur

21   damage by reason of the breach, namely the expense of

22   having to defend the appeal.  And it may very well be that

23   they would be entitled to recover their attorneys fees

24   incurred unnecessarily by reason of the breach, which would

25   be their damages arising from the breach itself, whereas

1    their attorneys fees ensuing to recover those damages would

2    be covered by Paragraph 15 of the settlement agreement.

3         The Pillsbury law firm and Mr. Potter have agreed

4    today that the Court need only declare that Pillsbury and

5    Mr. Potter would be entitled to recover whatever damages

6    they're entitled to by reason of such breach, including any

7    attorneys fees -- reasonable attorneys fees and costs

8    recoverable in any litigation concerning the breach, but

9    not limited to that form of recovery.

10        The parties have not briefed the issue of whether

11   attorneys fees incurred in defending the appeal would be

12   recoverable as a form of damages and in light of

13   Pillsbury's and Mr. Potter's agreement to limit their

14   request, I will not get into that issue in the Court's

15   declaration of the parties' rights.

16        Now, in reaching this decision I have considered

17   the arguments made by Mr. Wolff and Advantage Health Plan,

18   Incorporated.  The first argument is that the Court has

19   been divested of jurisdiction over the issues related to

20   the appeal by reason of the filing of the notice of appeal

21   from the order approving the settlement agreement.

22   However, as acknowledged in the argument with respect to

23   that point, the Bankruptcy Courts, quote, "retain authority

24   to implement or enforce previous orders absent a stay

25   pending appeal," unquote.  Citing two different decisions

1   and quoting from the first of those, In re Hutter, cited at

2   page 3 of the opposition.   This is not an attempt to alter

3   or amend the prior order approving the settlement

4   agreement.   It is a request for an order to enforce the

5   settlement agreement by declaring the effect of that

6   settlement agreement and making clear that it does indeed

7   require defense of the appeal by the Plan Committee.

8           The second argument raised in opposition is that

9   the declaratory relief should have been sought by way of an

10  adversary proceeding.   Rule 7001 sets forth the matters

11  that must be commenced as an adversary proceeding, and

12  number 9 out of a list of nine items is, quote,

13  "A proceeding to obtain a declaratory judgment relating to

14  any of the foregoing," unquote, eight items, and the only

15  item that's pointed to as requiring a declaratory judgment

16  to be commenced in this case as an adversary proceeding is,

17  quote, "1.   A proceeding to recover money or property,"

18  unquote, with exceptions of no relevance here.

19          The Pillsbury law firm and Mr. Potter have not

20  requested a monetary judgment.   They've requested a

21  declaration that certain acts will trigger an obligation --

22  let me rephrase it -- will constitute a breach of the

23  settlement agreement.   I don't construe that as being a

24  proceeding to recover money.   It is a proceeding to declare

25  that failure to defend the appeal will constitute a breach

1   so that the parties are on notice as to what does or does

2   not constitute a breach.  It was obviously brought for the

3   purpose of encouraging the Plan Committee to be aware of

4   its obligation to have counsel in place, and all evidence

5   on the record today is that it has succeeded in prompting a

6   decision by the Plan Committee to hire counsel and a

7   concession by the parties opposing the motion for

8   declaratory relief to acquiesce in the Plan Committee's

9   obtaining counsel to defend the appeal.

10          The case law is clear that a declaratory judgment

11  motion can be brought without filing an adversary

12  proceeding for such things as construing the terms of a

13  plan.  And obviously, the terms of a plan may have the

14  result of somebody being owed money, depending upon how

15  those terms are interpreted.  But simply because that may

16  later ensue does not mean that a request to interpret the

17  plan is itself a proceeding to recover money.  So the

18  procedural objection that an adversary proceeding was

19  required is overruled.

20          The next argument is that the requested relief is

21  not ripe.  This goes to paragraph 15 of the settlement

22  agreement and the contention that only once there is a

23  prevailing party in future litigation would there be an

24  entitlement to recover fees and costs.

25          I've suggested that this is not the type of

1    future litigation -- that the defense of the appeal is not
2    the type of future litigation that paragraph 15 is dealing
3    with.   Paragraph 15 is addressed to an action based upon
4    breach of the settlement agreement.   The appeal is not an
5    action concerning breach of the settlement agreement.   I
6    think today that the objecting parties have clarified that
7    their argument is that the appeal itself may make the issue
8    non-ripe, namely if they prevail on the appeal then there
9    won't be any settlement agreement and it would be improper
10   to adjudicate what would constitute a breach of the
11   settlement agreement if the settlement agreement at some
12   point in the future may no longer exist.   But this gets
13   back to the first argument that was made regarding the
14   effect of the pending appeal on this Court's ability to
15   address issues.
16         This Court, as I said previously, is entitled to
17   enforce the settlement agreement order unless it was stayed
18   pending appeal.   And I have to take the existing state of
19   affairs as it is, namely that there is an approved
20   settlement agreement, that the order approving it has not
21   been stayed, it is therefore effective and the Pillsbury
22   law firm and Mr. Potter are entitled to obtain a
23   declaration of their rights under the approved settlement
24   agreement.
25         The Court's order, of course, can indicate that

1  the order will not be effective in the event that the

2  settlement agreement were to be set aside.  I don't want to

3  put the objecting parties to the expense of an appeal of

4  this Court's order simply to preserve their right to set

5  aside the order in the event that they prevail on the other

6  appeal of the order approving the settlement agreement.

7        There was one final argument that the Court's

8  order would amount to an order addressing flights of fancy

9  in light of the fact that the Plan Committee obviously is

10  going to obtain counsel.  And it may very well be that the

11  issue will be a moot issue with respect to further defense

12  of the appeal if the Plan Committee promptly obtains

13  counsel who enters an appearance and defends the appeal.

14        But it's not a flight of fancy with respect to

15  the failure to defend the appeal in the past and with

16  respect to that obviously the Pillsbury firm and Mr. Potter

17  are entitled to a declaration of their rights and they're

18  entitled to a declaration of their rights in the future to

19  assure that the Plan Committee is put on notice that it has

20  an obligation to defend the appeal, lest it be in breach of

21  the settlement agreement.

22        This is an actual case or controversy as required

23  were this Court to have jurisdiction, and the pending

24  appeal, as Mr. Potter noted, is a real live pending appeal

25  and therefore not some theoretical matter.

34

1            If you could prepare the order, please,

2    Mr. Potter?  Thank you.

3            MS. NESSE:  May I request, Your Honor, that both

4    orders be submitted to me for review prior to filing with

5    the Court?

6            THE COURT:  If you could obtain Ms. Nesse's

7    endorsements on the two orders --

8            MR. POTTER:  Yes, Your Honor.

9            MS. NESSE:  Thank you.

10           THE COURT:  -- and if there's a disagreement

11   submit it with a notation that there's a disagreement, and

12   I'll resolve it.  Thank you.

13           MS. NESSE:  Thank you.

14           MR. POTTER:  Thank you, Your Honor.

15           MR. COHEN:  Thank you.

16           THE CLERK:  All rise.  This Court stands in

17   adjournment.

18           (Whereupon, the proceedings were concluded.)

19

20

21

22

23

35

UNITED STATES OF AMERICA )
                         )      Case No. 99-01159
DISTRICT OF COLUMBIA     )

      I, PAUL R. CUTLER, do hereby certify that a recording of the foregoing proceedings in the above matter was duplicated from an original recording by the Office of the Clerk, United States Bankruptcy Court for the District of Columbia, and that said duplicate recording of the proceedings was transcribed under my direction to typewritten form.

                                          _____

                                            PAUL R. CUTLER

      I do hereby certify that the foregoing transcript was typed by me and that said transcript is a true record of the recorded proceedings to the best of my ability.

                                          _____

                                          BONNIE FURLONG

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF COLUMBIA

```
- - - - - - - - - - - - - - - x
In Re:                         :
                               :
The GREATER SOUTHEAST COMMUNITY :
  HOSPITAL FOUNDATION, INC., and :
  GREATER SOUTHEAST COMMUNITY   :
  HOSPITAL CORPORATION          :
                               :
      Debtor                   : Case No. 99-01159
                               :
      (Chapter 11      ) :
                               : Washington, D.C.
- - - - - - - - - - - - - - - x February 15, 2008
```

TRANSCRIPT OF MOTION TO COMPEL
BEFORE THE HONORABLE S. MARTIN TEEL, JR.
UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

On behalf of Advantage Health Plan, Inc.
and Elliott R. Wolff:

JANET NESSE, ESQ.

On behalf of Patrick Potter and
Pillsbury Winthrop Shaw Pittman, LLP:

PATRICK POTTER, ESQ.
JERRY HALL, ESQ.

On behalf of Welcome Home, Inc.,
and Stanley Zupnik:

NELSON COHEN, ESQ.


Proceedings recorded by the Court, transcript produced
By Pro-Typists, Inc., 1012-14th Street, N.W., Suite 307,
Washington, D.C. 20005, 202-347-5395, www.pro-typists.com
B2398/bf

UNITED STATES OF AMERICA )
                         )
DISTRICT OF COLUMBIA     )

      I, PAUL R. CUTLER, do hereby certify that a recording of the foregoing proceedings in the above matter was duplicated from an original recording by the Office of the Clerk, United States Bankruptcy Court for the District of Columbia, and that said duplicate recording of the proceedings was transcribed under my direction to typewritten form.

                      _____
                           PAUL R. CUTLER

      I do hereby certify that the foregoing transcript was typed by me and that said transcript is a true record of the recorded proceedings to the best of my ability.

                      _____
                         BONNIE FURLONG